19-2163, Northern District of Iowa, Avera McKennan v. Meadowvale Dairy Employee Benefit Plan et al. Alright, Mr. Lorenzen, we'll hear from you first. May it please the court. This is an action under 29 U.S.C. Section 1132A1B for healthcare benefits provided by the Meadowvale Dairy Employee Benefit Plan. I represent the plan and the plan administrator. The action is brought by Avera McKennan, the purported assignee of a participant whose coverage under the plan was rescinded by the plan administrator for material misrepresentations. In addition to rescission, I will address in my oral argument questions about whether internal appeals were properly taken and exhausted and whether Avera has statutory standing to bring the action. These are the facts. In September 2015, Juan Pablo Garcia Marquez gave false information to Meadowvale when he applied for employment. Mr. Marquez provided Meadowvale with government documents that reflected a false name and a false social security number. Two months after starting employment, Mr. Marquez gave the same false name when he attempted to enroll in the company's ERISA benefit plan. The plan provides, and I'm quoting here, as part of the enrollment requirements, you will be required to provide your social security number. Failure to provide the required social security numbers may result in loss of eligibility or loss of continued eligibility under the plan. This language is not mentioned by the district court in its order on benefits claim review. Well, counsel, is it true that he didn't really have to give the number though? All he had to do was give the name? That is not correct, Judge Benton. The plan specifically requires that he provide his social security number and when he gave his name in enrolling for benefits, he implicitly provided also the same social security number which he had given when applying for enrollment. Yeah, but he didn't write it on the form, right? Excuse me? He did not write it on the form, right? It's not on the form, but this is similar to the same problem that was before the circuit in the Hernandez case in which an individual had applied for employment, given a false name, false social security number, left employment, and came back, returned, gave the same name, but didn't provide the social security number again. This court determined that in giving the same name, the person expected that the employer would understand that they were giving the same social security number and the social security number is required by the plan in order to enroll. Well, the district court seemed to think that because the Fair Labor Standard Act requires paying wages to unauthorized workers, that ERISA doesn't allow a plan to terminate an unauthorized worker. Maybe that's not a fair summary of the rationale, but there was certainly reliance on this Lucas case. Would you address that? Yes, Your Honor. Federal employment law and ERISA law are fundamentally different on this issue and in this respect. In other words, if someone applies for employment and works, they need to be paid whether their identity is falsely reported or not. And that's by statute. ERISA is different because ERISA is fundamentally contractual. In other words, it is plan driven. It is not required. There are no benefits that are required by ERISA. And ERISA is also driven by senses that the plan administrator is the one who's supposed to interpret what is required, what is material, based upon what the plan says. Federal employment law is not either analogous or material in any respect to an ERISA analysis. Did I address your question, Your Honor? I appreciate your answer. In January 2016, Mr. Marquez was hospitalized at Vera McKinnon. On that day, Vera McKinnon learned from Meadowvale that Mr. Marquez had been employed under a different name. And shortly afterwards, the plan administrator rescinded his coverage under the plan because he had falsely represented his identity in seeking coverage for benefits under the plan. One month after the plan administrator rescinded coverage, Mr. Marquez's mother purportedly signed a partial assignment of certain rights to Vera. And Mr. Marquez died before taking any internal plan appeals. After Mr. Marquez died, Vera attempted to take internal plan appeals, which the plan administrator denied for three reasons. First, the plan does not allow appeals to be taken by assinees. And neither Mr. Marquez nor his estate had properly authorized Vera to act as his authorized representative. In other words, as his agent. The second reason was the partial assignment provided by Vera was not valid. In other words, it was not properly signed by Mr. Marquez. And the third reason given by the plan administrator was that Mr. Marquez had submitted a false name and false social security number, which were material misrepresentations justifying rescission. Now, on the first point, does this raise the question of how far the Lutheran medical case goes? No. Well, we know you don't like Lutheran medical, but it says that the anti-assignment clause doesn't preclude assigning the cause of action. But as I understand your position here is it does preclude assigning the right to take internal appeals. Am I understanding your position on that? Lutheran medical only addresses an issue that has to do with the assignment of a cause of action, which at this point there was no cause of action because internal appeals had not been exhausted. And our Supreme Court has said a cause of action does not accrue until all the internal appeals are exhausted and the last denial is made. And so, at this stage, we're not talking about assignment of a cause of action, we're talking about internal plan administration. Who has the right or the authority to take internal appeals? And Lutheran medical does not address this issue at all. Now, be careful about it all because if you look at what the words of the actual assignment say, as you know, it says any cause of action you might have, ever have, in the future, any way, any slight chance of it. Boy, that sounds like that includes some sort of representative capacity. Your Honor, I think there's a fundamental difference which the Third Circuit has recognized and I think should be recognized, and that is between an assignee who would have the rights of the asinore and someone who is merely representing as an agent the rights of the participant in this case. And the plan administration should have the right to interpret the plan and decide who can take internal appeals and who cannot. That's internal plan administration and I will stand by the statement I made before that Lutheran medical doesn't address that issue at all. In fact, in Lutheran medical, the internal appeals had been completed before the assignment was made. And that's clear from the opinion. What about the words that say, stand in the shoes of, the assignment is valid, stand in the shoes of whatever rights the asinore possessed, now, forever, in the future, and all that? What about that? Doesn't that include representative capacity? No, Your Honor, it doesn't. And in fact, the regulations give plan administrators and plans by way of design, and the design is an important factor here because plan design is non-reviewable. And the way the plan is designed is it specifically says that assignments are not valid for purposes of the internal appeals. And that's how the plan administrator interpreted the plan on that. What exactly does it say about assignment? The words you gave are not the ones in the document when you say for purposes of internal appeals. Doesn't it say you may not assign benefits or payments? No, and I'll find the language here. It says that... Are we looking at the... Which document are you in here? Are you in the summary plan or are you in the employee benefit plan? The summary plan and the employee benefit plan are the same. I'm at Joint Appendix 190. A covered person is permitted to appoint an authorized representative to act on his or her behalf with respect to a benefit claim or appeal of a denial. An assignment of benefits by a covered person to a provider will not constitute appointment of that provider as an authorized representative. To appoint such a representative, the covered person must complete a form which can be obtained from the plan administrator or third party administrator. Now, the federal regulations give plan sponsors the right to determine and plan administrators to interpret and determine who can bring internal appeals and what procedures should be followed in order to be able to verify who the authorized persons are. And that is under the federal regulations. The district court on this point, as I recall, the district court may have acknowledged that the right form was not presented, but said that as a practical matter the claim had been exhausted because the plan addressed the merits, if you will, and therefore there was no need to require anything further. Wasn't that the district court's response to this argument? That's the district court's response, but that actually exceeds the district court's mandate in ERISA cases because it's the plan administrator that gets to decide who can bring plan appeals. The federal courts don't get to decide that. The plan administrator gets to interpret the plan document, which the administrator did in this case, and determined that an assignment was not appropriate or proper to authorize a VERA to bring the internal appeals and that they had to use a form. The regulations allow that sort of plan design. The plan document gives the plan administrator the authority to give that interpretation. If there is substantial evidence of that, the federal courts don't get to come up with common law federal exceptions to plan administrative interpretations that are valid. If there are no other questions at this stage, I would like to reserve the rest of my time for rebuttal. You may. Thank you for your argument. Mr. Dunn, we'll hear from you. Thank you, Your Honor. May it please the court. My name is John Dunn, and I represent the affilee of VERA McKinnon. VERA respectfully requests that this court affirm the district court on all issues raised by Meadowvale on appeal. Now, to address the first question that you had, Judge Colleton, the Fair Labor Standards Act and ERISA are very similar in that under either statute, the employer is obligated to comply with federal employment laws regardless of the employee's documented or undocumented status. And in the FLSA, it's clear that employees must be paid wages for hours worked. In ERISA, the touchstone, the guidepost for every plan administrator under ERISA is that the plan administrator must apply the plan according to its plain and ordinary language. In this case, Mr. Marquez was an employee. That is the only condition to eligibility for coverage under the plan. Right, but the concern is that the contract also allows for termination in certain circumstances, one of which is fraud and another which is intentional misrepresentations. And that wouldn't be applicable under the Fair Labor Standards Act. So query whether the false statement here about identity is sufficient grounds to terminate under the plain language of the contract. Can you address that? Yes, Your Honor. So under the plain language of the plan, the plan makes no reference to an individual's immigration status or even to his identity. And under the case law in the Eighth Circuit and elsewhere, a plan can only rescind coverage based on a material misrepresentation. And in the case law, for example, in Shipley and in other cases, in order for a representation to be material, it must influence the insurer's decision either to accept the risk or its assessment of the premiums that may be charged. Well, suppose the enrolling person here had given his real name. Would that have affected the plan's decision whether to allow enrollment? No, Your Honor, because the only condition was that he was an employee and he was enrolling as an employee. But if he had given his true name, wouldn't it have necessarily triggered it? Well, first of all, if he just sent in a form with his real name, wouldn't it have been declined because there's no employee by that name? Well, first, they didn't ask for him to provide his name. They did ask for it on the enrollment form. They asked him to sign to agree that any premiums or deductibles could be taken out of his paycheck and that he would be liable for that. So in this case, on the enrollment form, he didn't make a representation as to his name per se. Well, he signed the form with the name. I don't know if you're saying that's not a representation, but I'm just struggling with how it's immaterial, what his true identity is. Why wouldn't that be something that would be capable of influencing the plan when it decides whether to allow him to enroll? Well, there's nothing in the administrative record that indicates that his identity or his status as a documented or undocumented worker had any impact. For example, in the Garcia case, they were specific. In the Garcia case that is relied on by Meadowvale, they were specific in noting that the insurer looked to the Social Security number to determine the individual's insurability and for underwriting purposes. There's no such indication in this case. There's nothing in the record that says that he would have automatically been ineligible or that it would have made a difference if he had provided one name or the other. The question was whether he was an employee. And there isn't a dispute that he was, in fact, an employee. In the plan language, they specifically excluded certain workers. They excluded part-time workers, seasonal workers, independent contractors. If they were concerned about the person's identity or documented status, they could have excluded undocumented workers under the plan language, which certain plans do. In addition, if they were particularly concerned about somebody's status as an undocumented worker or their identity, they could have specifically requested that information on the enrollment form. For example, in the Trustmark case out of the Western District of Louisiana, the court in that case noted that the insurer's failure to request the information at issue cannot then be charged against the insured for his or her failure to provide that information. And they can't rely on the information that they did not request on the enrollment form. Well, okay. I understand your argument. Thank you. And specifically, the fact is that there's nothing in the record that indicates that the insurers looked at Mr. Marquez's documented, undocumented status or his identity until they received this bill for his health care expenses. And it was only at that time that they made the decision to rescind benefits. I'm sorry. I apologize. You mean there's no basis to infer that they cross-checked to make sure that a person applying is the same as someone who's employed? There's no indication that for plan purposes, they made any request or made any investigation into his identity for purposes of the plan. And this is all specific to his application and enrollment in the plan, at least under the case law under Shipley and case law throughout the circuit throughout the country. Now, on the issue of the assignment and the internal appeal, the argument that a district court does not have the authority to make exceptions to an internal plan appeal or to an interpretation ignores the fact that there are exceptions to the exhaustion requirements that are well established and have been upheld by this court and essentially every other court in the country. For example, when a exhaustion or the internal appeals would be futile or when the, I apologize, I'm spacing on the rest of them right now, but essentially when, in this case, any further appeal or any internal appeal by AVERA would have been futile, even looking past the fact that they substantially complied with the exhaustion requirement and that an administrative record was developed and the plan fiduciaries were allowed an opportunity to opine on the merits, as it were. So suppose the plan had just stopped after the first paragraph and said we reject the claim because you're not an authorized representative, period. Would that change the outcome here? It perhaps would have. There would have been a separate issue in that, in my view, AVERA would have had the opportunity to file suit in the district court and attempt to establish their claim that it would be futile to pursue any internal appeals in that the plan made it clear that they were going to deny any claim for benefits either then or in the future and that's precisely what they did in this case. So any further internal appeals within the plan would have been futile. Stepping back for one second, so on the issue of the plan interpretation and the amount of discretion that a plan administrator gets, when a plan administrator is granted discretion under the plan, they are provided an abuse of discretion standard when reviewed by the court. But that's only if they meet certain requirements and follow certain procedures. In this case, there was a clear conflict of interest that the district court correctly weighed in applying the abuse of discretion standard. In addition to that, the procedural irregularity in which the second level reviewer simply copy and pasted, I believe the language the district court used, the decision of the first level review, in that case the plan administrator did not provide Mr. Marquez the full and fair review to which he was entitled under the applicable regulations. Therefore, the court correctly applied that conflict of interest in determining whether the plan abused its discretion and by failing to follow the clear language of the plan, in addition to that conflict of interest in the procedural irregularity, the court correctly determined that there was an abuse of discretion. Now, on the issue of the assignment and the language that purports to prohibit assignment, elsewhere in the plan there is references to assignments to providers and there's other language in the plan that states that, that indicates that an assignment may be appropriate to a provider. And the language that Meadowvale is relying on to say that the plan prohibits the assignment of the right to take an internal appeal, it simply states that an assignment of benefits is not an authorization form. And even in that statement it seems to presuppose that there could be an assignment of benefits. If an assignment of benefits to a provider was a violation of other terms of the plan, it would be inconsistent to say that an assignment of benefits to a provider was not an authorization, the appropriate authorization form. Is there any record here of how, particularly this plan, or plans in general or any other evidence in the record, as to the routine course of dealing with hospital providers? The record indicates that there were direct payments made to providers from the plan. And that there were courses of dealing with the plan, or with this, with Avera specifically, there's two instances where it appears that they made some form of payment on Mr. Marquez's health medical expenses. It's not clear whether they just applied the deductible or specifically made a payment. And to sharpen a little bit, anything about the providers taking internal appeals, being authorized representatives? There isn't any, at least not to my knowledge, and I have reviewed the record. And a related question, even if you win on everything else, shouldn't there, under our king and bank opinion of 2205, shouldn't there be a remand? Because we all know how hospital bills are, how plans are, and it seems to me there should certainly be a remand under our in-bank opinion. What do you say to that even if you win everything else? Well, the plan never requested a remand, and they never took issue with the amount of benefits that were requested by Avera. Well, they didn't in king either, did they? I'm not sure on that. I'm not familiar with that specific portion of king. Our court's opinion certainly reads like they didn't. Let's just take the words of the court's opinion, our opinion, in-bank at its face. Surely that's the way it should go, right? Well, I disagree. When the plan had the opportunity to request a remand at the district court level, they failed to do so. And this isn't a question of plan interpretation, it's a question of whether this individual was an employee entitled to benefit. There's no indication that a remand to the plan would have any benefit to reconsider their decision. The plan had the opportunity, and having failed to raise the issue and request a remand in the district court, I argue that that argument is waived, and therefore they are precluded from bringing it up at this point. Thank you. In summary, Avera requests that this court affirm the district court's careful application of this court's law and the law of other circuits, and affirms the district court on all issues that were raised. Thank you. Thank you for your argument. Mr. Lawrenson, we'll hear from you in rebuttal. Judge Patton, there is absolutely no evidence that the plan has paid providers or paid Avera for anything, any of the expenses of Mr. Marquez or anybody else's expenses. Avera is a stranger to the plan. Arisa gives providers no rights. The plan gives providers no rights. Whatever rights Avera has would be by virtue of the partial assignment that was signed by Mr. Marquez's mother. As a threshold issue, the question is, is that an assignment at all? Is there any validity to it? The plan administrator determined that it was not properly executed, that her authority had not been properly shown. The question then becomes, who gets to decide that issue? It's quintessentially an issue of plan administration because it has to do with this problem about who has the authority to take internal appeals. What the district court's decision has done is it has turned upside down how Arisa works. Since Firestone and since the discretionary language was put in the plan, plan administration is quintessentially a matter for the plan administrator. What the district court's opinion did in this case is it made it quintessentially every issue a matter for the federal courts, which is simply not how Arisa works. In terms of the rescission, the plan administrator gets to decide what is material. What did the plan administrator or what did the plan rely on in terms of enrolling him? Of course, Avera could have fired this gentleman, finding out that he was an undocumented alien, in which case he never would have had any coverage at all. The plan itself provides for the materiality of all the information that was given by Mr. Garcia, Mr. Marquez. The plan administrator made that decision, said if this was material, we can rescind. It was certainly a misrepresentation. As far as the internal appeals are concerned, the federal courts should not be in a position where they are second-guessing plan administration for no reason other than they disagree with the plan administrator. The plan administrator had the right, under the documents, under the regulations, to determine what were the proper procedures for determining who was authorized. The plan administrator concluded that Avera McKinnon was not. For those reasons, internal procedures weren't exhausted. No cause of action accrued. No assignment took place. Avera does not have standing. For those reasons, the judgment of the district court should be reversed and the complaint dismissed. Very well. Thank you for your argument. Thank you to both counsel for appearing today via videoconference. The case is submitted and the court will file an opinion in due course. Thank you. Counsel are excused. You may disconnect or remain on.